UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
YUANWEN TENG,

        Plaintiff,                                       23-cv-7302

        - against –

TITAN GOLDEN CAPITAL LLC, TITAN GOLDEN        **COMPLAINT**
PROPERTY INVESTOR LLC, HAO TANG, and             **AND JURY DEMAND**
CHI FAI BEN WONG,

        Defendants.
------------------------------------------------------------------x

        Plaintiff Yuanwen ("Steven") Teng, by his attorneys, Bantle & Levy LLP, as and for his complaint against Defendants Titan Golden Capital LLC, Titan Golden Property Investor LLC, Hao Tang, and Chi Fai Ben Wong alleges as follows:

## NATURE OF THE ACTION

        1.     This is an action for failure to pay wages and unlawful retaliation in violation of the New York Labor Law, NYLL §§ 193, 198, 215 and 740 (the "NYLL").

        2.     Plaintiff also asserts claims against Titan Golden Capital LLC and Titan Golden Property Investor LLC sounding in breach of contract.

        3.     Plaintiff seeks declaratory relief and damages.

## JURISDICTION AND VENUE

        4.     This Court has jurisdiction over this action under 28 U.S.C. § 1332 insofar as this action is between citizens of different states and the amount in controversy exceeds $75,000.

        5.     A substantial part of the acts giving rise to this action were committed within the district of the United States District Court for the Southern District of New York, and venue is properly lodged in this Court pursuant to 28 U.S.C. § 1391(b).

1

**PARTIES**

6.Plaintiff Steven Teng is a Chinese national legally residing in the State of New Jersey.

7.Upon information and belief, Defendant Titan Golden Capital LLC ("Titan Capital") is a limited liability company organized under the laws of the State of California that is licensed to do business in the State of New York and maintains offices at 645 Madison Avenue, New York, New York 10022.

8.Upon information and belief, Titan Capital is a single-family investment company.

9.Upon information and belief, Defendant Titan Golden Property Investor LLC ("Titan Property") is a limited liability company organized under the laws of the State of Delaware that is licensed to do business in the State of New York and maintains offices at 645 Madison Avenue, New York, New York 10022.

10.Upon information and belief, Titan Property is real estate investment company.

11.Upon information and belief, Titan Property is a wholly-owned subsidiary of Titan Capital and is managed and controlled by the owners and executives of Titan Capital.

12.At all times relevant herein, Titan Capital and Titan Property operated as a single entity ("Titan" or the "Company").

13.At all times relevant herein, Titan was Teng's "employer" within the meaning of the NYLL, NYLL §§ 190(3) and 740.

14.At all times relevant herein, Teng was an "employee" of Titan within the meaning of the NYLL, NYLL §§ 190(2) and 740.

15. Upon information and belief, Defendant Hao Tang ("Tang") is a Hong Kongese foreign national residing of the State of California.

16. Upon information and belief, at all times relevant herein, Tang was the Owner and Chief Executive Officer of Titan Capital and, in that capacity, served as a "Member" of Titan Property.

17. Upon information and belief, Defendant Chi Fai Ben Wong ("Wong") is a Hong Kongese foreign national residing in the State of California.

18. Upon information and belief, at all times relevant herein, Wong served as Chief Financial Officer for Titan Capital and President, Vice President, Treasurer, and Secretary of Titan Property.

## STATEMENT OF FACTS

*Teng Joins Titan Global and is Relocated to New York*

19. Teng, who holds a BA in Business Economics from the University of California, Los Angeles (earned in 2014) and an MS in Finance from the University of Rochester's Simon Business School (earned in 2017), is an experienced finance professional.

20. On or about July 9, 2021, Teng was interviewed by Wong, the Company's Chief Financial Officer, and Fred Feng ("Feng"), the Company's Chief Operating Officer, for a position with Titan.

21. At the conclusion of the interview, which took place at the Company's office in Irvine, California, Teng was offered a position as a Senior Investment Analyst within Titan's Investment Department.

22. On or about July 13, 2021, Teng received a formal written offer of employment from Titan.

23. After formally accepting Titan's offer of employment, Teng commenced employment with the Company on or about August 13, 2021.

24. At the time that he joined the Company, Titan (through Titan Property) was in the process of acquiring the ground lease (the "Ground Lease") on a 22-story commercial office building in New York City located at 645 Madison Avenue, New York, New York 10022 (the "Building").

25. On or about September 7, 2021, Feng notified Teng that he was to oversee the due diligence process and closing on the Ground Lease and would be relocated from California to New York.

26. On or about September 8, 2021, Titan flew Teng to New York to oversee the Company's acquisition of the Ground Lease.

### *Teng Successfully Oversees Titan's Acquisition of the Building and Opens the Company's New York Office*

27. Upon his arrival in New York on September 8, 2021, Teng led Titan's efforts to acquire the Ground Lease.

28. Among other responsibilities during that time, Teng was tasked with overseeing the Company's due diligence process (including by meeting with Titan's real estate lawyers and due diligence consultants, running financial and investment return analyses, conducting lien, liability, and building violation searches, and reviewing property documents and in-place contracts) and negotiating the sale price with the seller.

29. Titan closed on the Ground Lease on or about November 8, 2021.

30. Due in large part to Teng's thoroughness in the due diligence process, he was able to negotiate a reduction of the sale price and, in so doing, realize substantial savings for the Company.

31. In recognition of his immediate impact with the Company, in November 2021 Teng received a strong performance review from Wong (his direct supervisor) in which he was praised for "protect[ing] successfully the Company's interest in the" purchase of the Ground Lease.

32. Based on his strong performance, on November 17, 2021, Teng was promoted to Investment Associate and given a raise.

33. Further evidencing his successful performance, at or about that same time, Teng was made a Vice President of Titan Property.

34. On or about November 9, 2021, the Company opened a New York office in the Building.

35. At the instruction of Ivy Ngai (an employee of a Hong Kong-based company owned by Tang who was then-responsible for managing Titan's Human Resources functions) and Wong, Teng was directed to oversee and grow Titan's New York office.

36. To that end, Teng recruited and oversaw the hiring of an Asset Manager and, subsequently, an Asset Manager Analyst.

37. Following Titan's purchase of the Ground Lease, Teng oversaw the Company's management of the Building (including transitioning ownership and operations, leasing office and retail space, restructuring existing and entering into new service contracts, running the Building's financials and tax filings, and overseeing ongoing construction projects) and was assigned responsibility for identifying and negotiating other potential commercial real estate acquisitions and investment opportunities for Titan.

38. Beginning in or about January 2022, Titan commenced efforts to acquire the Building itself and the land on which it sat (the "Fee Simple Purchase").

39. During a meeting at or about that time in Titan's New York office, Teng was praised by Tang for his contributions to the Company and was tasked with leading Titan's efforts in connection with the Fee Simple Purchase.

40. Over the ensuing months, Teng oversaw Titan's due diligence in connection with the Fee Simple Purchase, negotiated the sale price, and guided the transaction to completion.

41. On or about April 30, 2022, Titan (through Titan Property) closed on the Fee Simple Purchase of the Building for approximately $200 million.

42. In his official capacity as Vice President of Titan Property, Teng signed the Purchase Agreement, Settlement Statement, and all other closing documents on behalf of Titan.

43. Thereafter, in addition to managing the Building and sourcing new potential investment opportunities, Teng was tasked with leading Titan's efforts to refinance its purchase of the Building – including meeting with capital markets brokers and lenders, engaging in the loan underwriting, appraisal, and due diligence processes, and negotiating rates, amounts of loan proceeds, and debt covenants on term sheets for Titan.

44. In recognition of his continued successful performance with the Company, Teng was regularly praised for his efforts by Wong and Feng.

45. Teng also received positive feedback from Tang, including during a meeting at Tang's mansion in California in June 2022.

46. Throughout the duration of his employment with the Company, Teng received only positive feedback on his performance and received no performance warnings or negative appraisals of any kind.

***Titan Ceases Reimbursing Teng's Expenses and Fires Him for Complaining About its Failure to Pay Him***

47. In connection with his relocation from California to the New York City metropolitan area, Teng was repeatedly advised that Titan would reimburse his housing expenses and business expenses, including travel, transportation, food, and corporate entertainment (the "Reimbursable Expenses").

48. For instance, during a meeting in New York City in September 2021, Feng told Teng that Titan would reimburse his Reimbursable Expenses.

49. Feng reiterated that message to Teng in November 2021, telling him "rest assured that the Company will reimburse all of your expenses incurred in New York."

50. Likewise, Wong repeatedly assured Teng that Titan would reimburse his Reimbursable Expenses.

51. During those discussions, Feng and Wong made clear to Teng on behalf of Titan that the Company would cover his housing costs and business expenses.

52. Based on this agreement, and with Feng's authorization, Teng lived in a room at the Concorde Hotel New York that he rented from September 8, 2021 through October 2, 2021.

53. Thereafter, with Feng's and Wong's authorization, Teng rented an apartment through Airbnb in Jersey City, New Jersey, where he lived from October 2, 2021 through October 31, 2021.

54. From November 1, 2021 through January 16, 2022, again with Wong's authorization, Teng rented a two-bedroom apartment in New York City through Airbnb that he shared with the Asset Manager whose hiring he oversaw.

7

55.     While that rental was winding down, with Wong's authorization, Teng entered into a thirteen-month lease on an apartment in Jersey City, New Jersey, into which he moved on January 9, 2022.

56.     To facilitate the processing of his reimbursement requests, Wong instructed Teng to "ask Sherry Li for a claim form" for "housing and trip expenses and entertainment with customers and suppliers" – expenses that he directed Teng needed to be claimed "separately" from the Building's operational expenses.

57.     Beginning in October 2021, Teng submitted monthly expense reimbursement claim forms to Wong along with copies of his credit card statements supporting the expenses claimed therein.

58.     In those reimbursement claim forms, Teng identified (among other things) the amount of each expense, the date on which each expense was incurred, and a description of the nature of each expense (including categorization – i.e., rent, transportation, travel, entertainment, etc.).

59.     Teng submitted his September 2021 reimbursement form (and supporting credit card statements) to Wong on October 24, 2021 and was reimbursed in full for the expenses identified therein on or about October 25, 2021.

60.     Teng submitted his October 2021 and November 2021 reimbursement forms (and supporting credit card statements) to Wong on December 30, 2021 and was reimbursed in full for the expenses identified therein on or about December 31, 2021.

61.     Teng submitted his December 2021 and January 2022 reimbursement forms (and supporting credit card statements) to Wong on March 7, 2022.

62. On or about March 21, 2022, Titan reimbursed Teng for his December 2021 expenses.

63. In total, Titan reimbursed Teng for Reimbursable Expenses in the amount of $57,035.37 incurred from September 2021 through December 2021.

64. Without explanation and in contravention of the agreement between Teng and Titan, after making the reimbursement payment for Teng's December 2021 Reimbursable Expenses, Titan abruptly stopped reimbursing Teng for his Reimbursable Expenses.

65. On March 22, 2022, Teng reached out to Wong regarding Titan's failure to act on his reimbursement request for Reimbursable Expenses incurred in January 2022.

66. In response, Wong asked Teng to revise his January 2022 reimbursement claim form so as to make it "perfect in such a sense that I will not be criticisied [sic] if anyone inspect[s] it," adding that "some remarks [i.e., additional descriptive notes] will make my position easy."

67. At that time, Wong assured Teng that the Company would reimburse his January 2022 expenses and would continue to reimburse his Reimbursable Expenses on an ongoing basis.

68. On May 6, 2022, Teng advised Wong that he was finalizing his reimbursement claim forms for expenses incurred from January 2022 through April 2022.

69. In response, Wong told Teng to "ignore" the requests of Arnold Loy, the Company's Accountant, for additional information supporting his expense claims and to instead "Go thru Fred [Feng]" to seek reimbursement of his Reimbursable Expenses.

70. During a meeting at Titan's California office on or about August 1, 2022 regarding the Building and potential deals that he was pursuing in New York City and Miami,

Wong again assured Teng that the Company would reimburse his Reimbursable Expenses and instructed him to email his reimbursement claim forms to Feng.

71. On Wong's instruction, Teng emailed copies of his reimbursement claim forms and supporting credit card statements for January 2022 through April 2022 to Feng (cc'ing Wong) on August 3, 2022.

72. On August 17, 2022, Teng complained to Wong that "no one replied" to him regarding his requests for reimbursement of his Reimbursable Expenses and that he was "almost bankrupt."

73. In response, Wong instructed Teng to send the requests to "David [Lu] and Fred [Feng]," which Teng did again.

74. Nevertheless, Titan did not reimburse Teng for the Reimbursable Expenses it owed him.

75. Teng again raised the issue of Titan's failure to reimburse him for his Reimbursable Expenses with Wong on August 19, 2022, writing, "What am I supposed to do with business expense reimbursements? I went through the entire process as you suggested on August 1, 2022, still no news."

76. In another message Teng sent to Wong that same day, Teng stated that due to Titan's failure to reimburse him for the Reimbursable Expenses that were due and owing, "I will start looking for another job."

77. Because, despite its promise to do so, Titan had failed to reimburse Teng's Reimbursable Expenses, on August 19, 2022, Teng sent the following message to Tang, the Company's Chief Executive Officer:

> Mr. Tang, sorry to bother you. In New York, I have been helping the company find deal projects that can be invested, and I have

> been working extremely hard for the company. Since I joined the company, from the Ground Lease transaction to the Operations of the building and the land acquisition all of which have saved the company a lot of money. Every contract was heavily negotiated to the best interest of the Company. I am not here to ask for promotion. I have been using my own money paying out of pocket working through various projects here in NYC, and I haven't been reimbursed from January until now. I don't have much savings left. It's been a few weeks since I reported those business expense reimbursements. Roughly $100,000 has not been approved, I don't know what to do now.

78. Less than two weeks later, Teng's employment with Titan was abruptly terminated for pretextual reasons, including purportedly for "outing" the Company's Asset Manager, an openly gay man who Teng recruited to Titan and subsequently shared corporate housing with.

79. Teng's complaints to Titan (including those to Tang and Wong) regarding the Company's failure to reimburse him for his Reimbursable Expenses were a motivating factor in Titan's decision to terminate his employment.

80. Upon information and belief, the decision to terminate Teng's employment with Titan was made jointly by Tang and Wong based on their shared frustration with Teng for repeatedly raising concerns about the Company's failure to reimburse him for his Reimbursable Expenses.

81. Titan's termination of Teng's employment was motivated by and constitutes retaliation against him for his raising concerns about its failure to comply with the NYLL.

82. As a result of Titan, Tang, and Wong's retaliatory conduct, Teng has suffered a loss of income, professional stature, benefits and other perquisites of employment, including continuing opportunities for promotion, advancement, recognition, and increased compensation that he otherwise would have received had his employment not been terminated.

11

83. The actions of the Defendants described above were undertaken willfully, intentionally, maliciously, and with reckless indifference to Teng's protected rights.

84. Following its termination of Teng's employment, by letter dated September 19, 2022, Titan reiterated to Teng that it would reimburse him for his Reimbursable Expenses "if he follows Company's policies and provide proofs of his alleged business expenses."

85. Seeking to amicably resolve this issue, Teng dutifully provided Titan with an accounting supporting his reimbursement requests for the Reimbursable Expenses he incurred from January 2022 through August 2022.

86. Between January 2022 and the termination of his employment in August 2022, Teng incurred Relocation Expenses totaling $126,741.00.

87. Despite Teng's compliance with its request and having acknowledged its duty to do so, to date, Titan has nevertheless failed to reimburse Teng for his Reimbursable Expenses that are due and owing.

## FIRST CAUSE OF ACTION
*Failure to Pay Benefits or Wage Supplements in Violation of the NYLL Against Titan*

88. Teng repeats and realleges the allegations in paragraphs 1 through 87 inclusive as if fully set forth herein.

89. The NYLL, as amended by the No Wage Theft Loophole Act, prohibits an employer's failure to pay its employee's "benefits or wage supplements," which is defined to include "reimbursement for expenses." *See* NYLL §§ 190(1), 198-c(2), 193(5), and 198(3).

90. In pertinent part, NYLL § 193 provides that "[t]here is *no exception* to liability under this section for the unauthorized failure to pay wages, benefits or wage supplements." NYLL § 193(5) (emphasis added).

91. Similarly, NYLL § 198 provides that "*all* employees shall have the right to recover full wages, benefits and wage supplements and liquidated damages" and that there "is *no exception* to liability under this section for the unauthorized failure to pay wages, benefits or wage supplements." NYLL § 198(3) (emphasis added).

92. Titan has failed to reimburse Teng for his Reimbursable Expenses totaling $126,741.00.

93. Titan's failure to reimburse Teng for his Reimbursable Expenses was willful, intentional, and recklessly indifferent to his protected rights.

94. Titan's failure to reimburse Teng for his Reimbursable Expenses violates the NYLL, NYLL §§ 193(5) and 198(3).

95. Pursuant to the NYLL, as a result of Titan's willful refusal and failure to reimburse Teng his Relocation Expenses, Teng is entitled to reimbursement of his Reimbursable Expenses in full, his costs and attorneys' fees, and a 100 percent liquidated penalty.

## SECOND CAUSE OF ACTION
*Breach of Contract*

96. Teng repeats and realleges the allegations in paragraphs 1 through 95 inclusive as if fully set forth herein.

97. To facilitate his relocation from California to the New York City metropolitan area on behalf of the Company, Titan agreed to reimburse Teng for his Reimbursable Expenses (the "Agreement").

98. Teng fully performed his obligations under the Agreement, including successfully overseeing Titan's acquisition of the Ground Lease and Fee Simple Purchase following his relocation to the New York City metropolitan area.

99. In breach of the Agreement, Titan has failed and refused (despite Teng's due demands and compliance with Titan's reimbursement processing protocols) to make payment of Teng's Reimbursable Expenses he incurred while working with the Company from January 2022 through August 2022.

100. By reason of the foregoing, Teng has been damaged in an amount believed to be (exclusive of statutory interest) $126,741.00

### THIRD CAUSE OF ACTION
*Promissory Estoppel*

101. Teng repeats and realleges the allegations in paragraphs 1 through 100 inclusive as if fully set forth herein.

102. Titan entered into the Agreement with Teng to entice him to relocate from California to the New York City metropolitan area on its behalf.

103. It was reasonable and foreseeable that Teng would – and, in fact, did – rely on Titan's unambiguous promise to reimburse him for his Reimbursable Expenses.

104. In reliance on the Agreement and Titan's unambiguous promise to reimburse him for his Reimbursable Expenses, Teng incurred approximately $126,741.00 in Reimbursable Expenses between January 2022 and August 2022 (including for rent, travel, and transportation) that the Company has failed and refused to reimburse him for.

105. By reason of the foregoing, Teng has been injured by his reliance on the promise that Titan made to him via the Agreement to reimburse him for his Reimbursable Expenses.

### FOURTH CAUSE OF ACTION
*Unjust Enrichment*

106. Teng repeats and realleges the allegations in paragraphs 1 through 105 inclusive as if fully set forth herein.

107. By reason of the foregoing, Titan was wrongfully and unjustly enriched in an amount to be determined at trial but believed to be no less than $126,741.00, exclusive of statutory interest.

108. Titan unjustly enriched itself at Teng's expense.

109. The circumstances and facts set forth herein are such that, in equity and good conscience, Titan should be compelled to disgorge and reimburse Teng for his Reimbursable Expenses incurred from January 2022 through August 2022, plus statutory interest.

### FIFTH CAUSE OF ACTION
*Retaliation in Violation of NYLL 215 Against Defendants*

110. Teng repeats and realleges the allegations in paragraphs 1 through 109 inclusive as if fully set forth herein.

111. Teng made complaints to his superiors about Titan's violations of the NYLL – namely, its refusal and failure to reimburse his Reimbursable Expenses – to Wong and Tang.

112. Titan, Wong, and Tang retaliated against Teng by terminating his employment in response to his complaints about its violations of the NYLL.

113. Defendants' retaliatory termination of Teng's employment violates the NYLL, NYLL § 215.

114. As a result of Defendants' retaliatory acts, Teng suffered damages, including, without limitation, deprivation of income and benefits, loss of other perquisites of employment, and loss of employment opportunities.

### SIXTH CAUSE OF ACTION
*Retaliation in Violation of NYLL 740 Against Titan*

115. Teng repeats and realleges the allegations in paragraphs 1 through 114 inclusive as if fully set forth herein.

116. Teng made complaints to his superiors about Titan's violations of the NYLL – namely, its refusal and failure to reimburse his Reimbursable Expenses – to Wong and Tang.

117. Titan retaliated against Teng by terminating his employment in response to his complaints about its violations of the NYLL.

118. Titan's retaliatory termination of Teng's employment violates the NYLL, NYLL § 740.

119. As a result of Titan's retaliatory acts, Teng suffered damages, including, without limitation, deprivation of income and benefits, loss of other perquisites of employment, and loss of employment opportunities.

## JURY DEMAND

120. Teng hereby demands trial by jury.

**WHEREFORE**, Teng respectfully requests that this Court grant the following relief against Titan:

(1) A declaratory judgment that the acts, policies, practices, and procedures complained of herein violated Teng's rights as secured by the NYLL, NYLL §§ 190 *et seq.*, 215, and 740;

(2) Reinstatement to the highest position to which Teng was and would be entitled and/or front pay;

(3) Actual damages in the form of:

  a. Back pay with interest based on Teng's appropriate compensation had he not been unlawfully terminated;

        b.    Reimbursement for lost bonuses, stock, health benefits, 401K contributions, social security, experience, training opportunities, and other benefits in an amount to be proven at trial; and

        c.    Unpaid wages (i.e., the Reimbursable Expenses) in an amount to be proven at trial but believed to be $126,741.00

(4)    Liquidated damages as provided for by the NYLL;

(5)    Civil penalties as provided for by the NYLL;

(6)    Punitive damages as provided for by the NYLL;

(7)    Attorneys' fees;

(8)    Costs and disbursements;

(9)    Interest; and

(10)    Such other and further relief as is deemed just and proper.

Dated: New York, New York
       August 17, 2023                            BANTLE & LEVY LLP

                                                  By:   *H. David Krauss*
                                                         H. David Krauss
                                                         99 Park Avenue, Suite 1510
                                                        New York, New York 10016
                                                         Tel: (212) 228-9666
                                                        krauss@civilrightsfirm.com
                                                         *Attorneys for Plaintiff Yuanwen Teng*